Secretary of Corrections Secretary of Corrections May it please the Court, Crosley Alexander Green has spent 28 years in prison for a crime he did not commit. Good morning, Your Honor. My name is Keith Harrison, and I and my colleagues, Gene Thomas and Robert Rode, represent Mr. Green in this case. The decision below should be reversed for two reasons. The petition was timely filed and Mr. Green is actually innocent. With regard to Mr. Green's... Let me ask you a couple of questions here. First of all, if you prevail on Issue 1, I assume the case would go back to the district court with instructions to reconsider or reverse the decision on the timeliness of the petition, right? Your Honor, when you say Issue 1, which issue... Yes, Your Honor, that's correct. With regard to timeliness... So then what happens with actual innocence? There was not a Certificate of Appealability granted on that, and what do you do with that at this point? Well, Your Honor, the Certificate of Appealability dealt with whether the petition was timely... And that seems to me to dispose of the appeal. And then what happens with the actual innocence claim? Do you have to go back down and relitigate that? Do you go back down and... I mean... Yes, Your Honor, I understand. Okay. Yes. If this court disposes of the case with regard to untimeliness... We could amend the Certificate of Appealability to include the actual innocence issue. Yes, Your Honor. But in the event that does not happen, then it would go down below with regard to... Fair point, Your Honor. Fair point. With regard to that actual innocence claim, there are two facts that are particularly relevant that I'd like to highlight at the outset. The first is... But that hasn't been briefed, right? I mean, shouldn't we decide whether or not you win on your first issue and then determine whether or not to amend the Certificate of Appealability and have you argue that after it's been fully briefed? Certainly, Your Honor, that's one way to proceed. Our position has always been that actual innocence being a gateway to the time bar is well within the Certificate of Appealability. I'll tell you where I'm at. I think you've got a pretty good issue on timeliness. And if we reverse on that, then I'd like to hear from you where we go. That's kind of where I'm at. Certainly, Your Honor. So would you like me to address the timeliness issue or what happens if the court sends the case back to the district court? Well, it seems to me he filed a timely petition that was insufficient once. He filed it a second time that was insufficient. The third time he filed it, it was fine. And under 11th Circuit precedent, that reverts back to the first one. So the district judge dismissed the case without having a timeliness. He made a mistake. That's certainly our view, Your Honor. We believe that Mr. Green was completely entitled to rely on the Sparrow Doctrine, which is clear and controlling state law in this case. And with regard to comedy, the federal courts must defer to state courts in determining when a case is properly filed and pending. But your firm filed all of the petitions. That's correct, Your Honor. I believe there were only two. There was only, well, yes, Your Honor. Our firm filed all the petitions in this case. Everything, including the one that wasn't properly under oath. Yes, Your Honor. There were six additional words in the oath. But that, pursuant to Sparrow, was corrected within 10 days. I say that to say it's not a pro se matter. No, it's not a pro se matter, Your Honor. We are defending Mr. Green pro bono. And it was counsel that prepared that oath and made that oath. But we also amended it within 10 days. And it was appropriate. The court ruled that it was... But when the district court first dismissed the petition, because it hadn't exhausted all the claims, everybody knew how much time was left. Yes, Your Honor. We certainly believed that we knew how much time was left under clear Florida state law. We filed a safety petition, which was not a shell petition, but it was a lengthy and detailed petition. And we filed a motion to stay and obey, pursuant to Justice Rehnquist's suggestion in the Guillermo case. That was dismissed by the court. And based on the Sparrow doctrine, Mr. Green and his counsel had every reason to believe that the case had been properly filed and pending during the entirety of the state court proceeding. And it was not until on appeal, when the state raised for the first time, that it might be untimely. Now, the state has never addressed the Sparrow issue. The Sparrow case is nowhere reflected in any of the briefing of the court. And so they ignore Sparrow. They ignore well-settled state law. The district court erred in ignoring the Sparrow doctrine and state law. The district court relied on an unpublished decision of this case, of this court, the Jones decision, which does not discuss... It cites state law. I'm sorry? It cites the law. It cites some law, Your Honor, but not the applicable law in this circumstance. And it should not be relied on to deny Mr. Green his constitutional rights in this instance. Do you work on civil cases at Crowell and Mooring in Washington, D.C.? Is that where you work on? I do, Your Honor. If you file a civil case and I find that you've missed an element of the statute you're pleading under and I dismiss it, and I give you 30 days to amend without prejudice, and you come back and file an appropriate complaint, but that's out of the statute of limitations, what's your position on whether or not you've timely filed a complaint? Your Honor, my position would be that under the laws of most jurisdictions, that complaint would be timely. Why? Because it would relate back to the original filing. Exactly. All right. And, Your Honor, that was precisely the issue raised in Sparrow. In fact, the Sparrow court analogized to a civil complaint and... Well, I read Bryant v. Florida. That's essentially, I mean, that essentially says what I just said, doesn't it? That's correct, Your Honor. That's correct. And it also, Bryant filled the gap for situations where a petitioner would have filed a timely petition, but that was facially insufficient. But then the statute ran before the amendment, and the whole purpose of Bryant was from a due process perspective to allow that relation back. And then in Sparrow, the court, building on Bryant, applied that same rationale to 3851. So it wasn't just death penalty cases, which is what Bryant referred to. It was all post-conviction criminal proceedings. So the state law is abundantly clear. Mr. Green and his counsel were entitled to rely on that clear state law that was later codified. In 2013, the state of Florida actually codified the Sparrow procedure into law. 1.190C of the Florida Rules of Civil Procedure, right? That's correct, Your Honor. But also, it's reflected in 3.851 f. That applies it to the post-judgment conviction, post-conviction proceedings. That's correct, Your Honor. Mr. Harrison, the third amended Rule 3.850 motion was within the statute. That's correct, Your Honor. So what we're talking about is the time that elapsed between the first and that one, and the relation back. That's correct, Your Honor. The time—I'm sorry. No, please go ahead. Yes, the time between the first petition and the second petition. And it was the second petition that the trial court reviewed, found was facially insufficient, and invoked the Sparrow procedure. Dismissed it without prejudice, expressly. Provided 30 days for amendment. It was amended within 10. And then that court ruled that it had been properly amended and proceeded with the case. So it is clear that under state law, it was properly filed and pending during the entirety of that time frame. To follow up on Judge Murphy's question, what you're asking for, as I understand it—this is a question— you want us to send it back to the district court so that the district court can consider your actual innocence claims on the merits. You're not asking us to do that now, right? Well, Your Honor, that is a fair question. You'll take it either, right? I will give you an honest answer, Your Honor. Since this court has the opportunity to review de novo the denial of the actual innocence claims, we are asking this court to do just that. Because when the case is sent back, actual innocence is a gateway, not only to the time bar, but to other procedural bars which may crop up. And as this court is well aware, there are a minefield of potential procedural bars that could crop up in the district court. And if this court were to rule that there is compelling evidence that Mr. Green is actually innocent, it would open up that gateway. It would actually make the district court proceedings much more efficient. Mr. Harrison, you have a terrible burden in the actual innocence case because he can't possibly be actual innocent unless Green and the other chap, their change of testimony is reasonable. But both of them went to the United States attorney to make a deal. One, Jim Schuthan, represented, he was a long-term public defender in middle Florida, represented one, and a man named Deese represented the other. And they both went to the U.S. attorney seeking a deal. And the U.S. attorney told the lawyers to debrief their clients and then make a presentation. And they had three sessions in the U.S. attorney's office with counsel present when they made their admissions that led to the conviction. So your problem is that if you're right, then Mr. Schuthan and Mr. Deese suborned perjury in the United States attorney's office. Your Honor. In terms of the recantations. Your Honor, with regard to the recantations, I don't believe it's a question. I don't see that observation because I don't think that you quite see that. Your Honor, that is an excellent point. However, there's substantial additional evidence of actual innocence. I understand that. But those are the two critical witnesses. There's no question that the burden is a high one, Your Honor. There's no question that if you're right, the assistant federal public defender in the Middle Eastern Florida of longstanding and his colleague suborned perjury. Your Honor, as a former prosecutor, I would respectfully disagree. When you put a witness as a prosecutor on the stand, you do the best you can to ensure. When a defense lawyer of reputation goes to the United States attorney and says my client has information and wants to cooperate, the United States attorney tells him to debrief the client and make a presentation. They debrief these two clients at least three times with sworn statements corroborating what they had told their own lawyers. And so if what they said under oath was false, then I suggest that the lawyers ought to be investigated for separation of perjury. I understand your point, Your Honor. Okay. I just throw that out for your thoughts. Thank you, Your Honor. Notwithstanding the recantations, there's compelling evidence of actual innocence in this case. This is an unusual case. This is a rare case where we have two police officers who 60 days after Mr. Green had been arrested told the prosecutor in no uncertain terms that Mr. Green was innocent based on their initial investigations. And this was withheld from the prosecution, from the government. I'm sorry, Your Honor. From the defense. And there's another point that's key with regard to those notes that were withheld. And the prosecution withheld those notes and would not even reveal them and took the position that they were attorney-client privilege. In fact, the judge had to review them in camera before they were released. But these notes also say that Ms. Halleck initially told a very different story to the police than what she told the jury and the police subsequently. In fact, Ms. Halleck told the police that she and not the black guy had tied her ex-boyfriend's hands together. That is a key fact that was withheld from the defense. That was a flip-flop that would have been devastating to the only witness's credibility at trial. And that was a constitutional violation that undoubtedly impacted the jury's decision. I think we understand your point. You're saying it's over a bottle of time. Thank you, Your Honor. Ms. Nealon. May it please the court, counsel, good morning. Kelly Nealon on behalf of the Florida Attorney General and Department of Corrections. It's our position that in 2010 or 2000, this court held that a 3850 that is not sworn is not properly filed and does not toll the time under the AEDPA. That was the Hurley case in 2012. In the Hurley case, the document that the defense was trying to get to relate back was filed outside of the statute of limitations. So we have a different case here, do we not? No, I don't. No, the 3850 was filed outside of the . . . for which they're seeking a relation back was still filed within the statute of limitations. That wouldn't even make a difference, though. I mean, it's black-letter law. There's, like, pretty much only one rule left since the AEDPA was passed, and that is a motion in state law that is not properly sworn is not properly filed under the AEDPA. I mean, that has been the black-letter law within this court for the last 17 years. Can I point out what I believe is a mistake in your argument? You say repeatedly that Mr. Green never asserted actual innocence in his petition, but on the day he filed his petition, he filed a memorandum of law in support of his petition. And front and center is his claim of actual innocence. And his petition where it says, please explain why the statute of limitations doesn't apply to your case, he wrote, not applicable. You've made that argument. My point is that simultaneous with the filing of the petition, he did assert claims of actual innocence. I understand that, but actual . . . And you acknowledge that that is true. Actual innocence is not . . . You acknowledge that that is true. Correct. But actual innocence is not a stand-alone federal habeas corpus claim. It's a gateway to be able to file an untimely petition. It's also a way to overcome a procedural bar in claims that have not been raised in state court. It's not a stand-alone habeas claim. And he never asserted it as the basis for an untimely petition. What are we doing here, then? I mean, if it's a gateway, we could do whatever we want. We could affirm across the board and give you all the relief you wanted. And he could file another habeas petition based on actual innocence as a gateway to overcome not only the untimeliness, but the procedural bar on successive petitions, right? That he could. Yeah. And it would all be responded to. It wouldn't have been raised in a reply brief, and the court would have, you know, ordered us to respond to it. All right. Absolutely, he could do that. All right. Okay. But I'm saying this petition, he cannot do that in this case. And I would also like to point out on his actual innocence claim, just because it wasn't, like, fully addressed, so I'm not going to fully address it. It is addressed in the letter brief, but his . . . Deputy Rixey testified that he had no contact with Ms. Hallock that night. She was brought to the crime scene. He referred to her as the complainant. He said she was in the other deputy's car. I never even talked to her that night. So for him to now be saying . . . I mean, that flies in the face of everything that's in his affidavit. So I would ask this court to affirm the order of the district court in all respects. Thank you. Thank you. With regard to the points raised by the State, Hurley, first of all, was a decision in 2000. It was pre-Spera, and therefore we believe has been superseded by the Spera doctrine. In addition, in the Hurley case, despite numerous opportunities to cure the defect, in that case the defect was never cured. So it is factually an opposite to this case. With regard to the State's argument that we did not anticipate that our petition was untimely, it's because it was not untimely. And therefore, there was no basis for us to put in the petition a defense to untimeliness at that time, Your Honor, for all the reasons that we have set forth before this court. Thank you very much. I'll just leave the bench. All right. For the third case, I am recused, so I will simply leave the bench. Let's take a 15-minute break. A 15-minute break.